# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| XONG V. DINH<br>5156 BINGHAM STREET PHILADELPHIA,<br>PA 19120 , and<br><br>SUONG THI HUYNH<br>534 ANCHOR STREET<br>PHILADELPHIA, PA 19120<br><br>PLAINTIFFS,<br><br>vs.<br><br>RUSHMORE LOAN MANAGEMENT<br>SERVICES LLC<br>15480 LAGUNA CANYON ROAD,<br>SUITE 100<br>IRVINE, CA 92618<br><br>SPECIALIZED LOAN SERVICING<br>6200 QUEBEC ST STE 300<br>GREENWOOD VILLAGE CO 80111<br><br>NEWREZ LLC d/b/a SHELLPOINT<br>MORTGAGE SERVICING<br>75 BEATTIE PL #300<br>GREENVILLE SC 29601<br><br>DEFENDANTS | **DOCKET NO**<br><br><br>CIVIL ACTION COMPLAINT |

## Parties and Jurisdiction

1. XONG V. DINH  and SUONG THI HUYNH, collectively at times also identified as the "Plaintiff", reside at 5156 Bingham Street, Philadelphia, PA 19120  (the "property").

2. Defendant RUSHMORE LOAN MANAGEMENT SERVICES LLC  was, at all material times hereto, a foreign corporation whose corporate domicile and alleged authority to do business in the Commonwealth of Pennsylvania is unknown, but with its principal office at 15480 LAGUNA CANYON ROAD, SUITE 100  IRVINE, CA 92618.

3. Defendant SPECIALIZED LOAN SERVICING was, at all material times hereto, a foreign corporation whose corporate domicile and alleged authority to do business in the Commonwealth of Pennsylvania is unknown, but with its principal office at 6200 QUEBEC ST STE 300 GREENWOOD VILLAGE CO 80111.

4. Defendant NEWREZ LLC d/b/a SHELLPOINT MORTGAGE SERVICING was, at all material times hereto, a foreign corporation whose corporate domicile and alleged authority to do business in the Commonwealth of Pennsylvania is unknown, but with its principal office at 75 BEATTIE PL #300 GREENVILLE SC 29601.

5. Defendants and all of them, at all material times hereto, doing business within the County of Philadelphia, Commonwealth of Pennsylvania, which included the solicitation of Philadelphia customers, and the collection and management of payments

6. At all times relevant and material hereto the Defendants and all of them, were the owners and/or servicers of the Note/Mortgage referenced herein - Mortgage Loan No.: 1031883239, or, alternatively were the successors in interest as owners or servicers of the note, charged with and/or inheriting the responsibility and liability of all prior acts of servicing, managing, maintaining, processing loss mitigation applications and doing all acts necessary to handle the Note/Mortgage in accordance with applicable State and Federal regulations, acting at all times did act on its own individual behalf and as agents, servants, workmen and/or employees of the owner of the Note/Mortgage and of each other.

7. As a successor in interest as owners or servicers of the note, the Defendants, individually or jointly, purchased or otherwise assumed all assets and liabilities of the subject Note, including but not limited to the servicing of the same in accordance with the hereinafter cited law.

8. Jurisdiction is based on 28 U.S. Code § 1331 as the issue in controversy arising under the Constitution, laws, or treaties of the United States, 12 USC Section 2601 et seq. including Regulation Z, which is found at 24 C.F.R. § 3500, as well as: 12 CFR Part 1024 et seq.

including Regulation X, and 12 USC Section 2605, 15 U.S.C.A. § 1601 et. Seq., and 18 U.S. Code § 1343.

9. The amount in controversy is in excess of $75,000.00.

## Background Material Facts

10. At all times relevant and material hereto the Note/Mortgage of the Plaintiff, identified by LOANCARE LLC  as Mortgage Loan No.: 1031883239, associated with the property, was alleged to be in a default status.

11. Thereafter the Plaintiff attempted to pursue Loss Mitigation offered by the Defendants, by appropriately completing and submitting a Loan Modification to the Defendants, which Defendants deemed eligible and qualifying.

12. On or about March 25, 2024, the Plaintiffs were offered a Trial Plan Modification (TP) via letter from Defendant Specialized Loan Servicing, a copy of which is attached hereto, incorporated herein by reference and marked as **Exhibit A.**

13. This TP offer speaks for itself, but in essence the terms included:

| Summary | Here's a summary of  your proposed modified mortgage | |
|---|---|---|
| | | |
| | TRIAL PERIOD PLAN INFO | |
| Trial Start Date | 05/01/2024 | |
| Number of Trial Payments | 3 | |
| Trial Payment Amount | Please see the included trial agreement for the full schedule of payments and due dates. | |
| Estimated Terms (All Figures Below) | Pre-Modification | Post-Modification |
| P&I Payment Amount | $259.44 | $126.04 |
| Escrow Payment Amount | if applicable this amount would have been disclosed in your escrow analysis | $157.31 |
| Total Payment Amount | $475.36 | $283.35 |

| | | |
|---|---|---|
| Permanent Modification Start Date | N/A | 08/01/2024 |
| Partial Claim | If applicable this amount would have been disclosed in your prior workout agreement | $0.00 |
| Principal Balance | $9,861.47 | $20,889.63 |
| Interest Bearing Principal Balance | $9,861.47 | $20,889.63 |
| Interest Rate | 6.750 % | 6.750% |
| Loan Maturity Date | 07/01/2031 | 04/01/2064 |
| Amortization Term | 360 | 480 |
| Balloon Date | N/A | N/A |
| Balloon Amount | If applicable, this amount would have been disclosed in your prior workout agreement | The estimated balloon amount will be communicated in the Final Modification Agreement |

14. At all times relevant and material hereto the Plaintiffs accepted the TP offer, creating a binding contract between the Plaintiffs and the Defendants., which contained the following promise:

**TRIAL PERIOD PLAN**

If I am in compliance with this Trial Period Plan (the "Plan") and my representations as provided in the hardship letter and financial information package continue to be true in all material respects, then Specialized Loan Servicing LLC will provide me with a Modification Agreement, as set forth in Section 3, that would amend and supplement (1) the Mortgage on the property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents". Capitalized terms used in this document and not defined have the meaning given to them in the Loan Documents

15. At all times relevant and material hereto the Plaintiffs performed their duties under the TP Agreement and made the required payments.

16. However, without reason or justification, the Defendant Shellpoint Mortgage Servicing, via letters, returned the Plaintiffs' TP payment - an example is evidenced by a copy of this Defendant's letter to the Plaintiff's dated June 24, 2024 - a copy of which is attached hereto, incorporated herein by reference and marked as **Exhibit B.**

17. Thereafter the Defendants denied the Plaintiffs their adherence to the TP Agreement, and denied the Plaintiffs a Permanency Modification Agreement, without stating any reasons in writing and without offering alternative loss mitigation options - all in direct violation of 12 C.F.R. § 1026.41(c).

18. Thereafter the Defendants, via letter of Defendant Shellpoint Mortgage Servicing, dated July 31, 2024 - a copy of which is attached hereto, incorporated herein by reference and

marked as **Exhibit C**, falsely accused the Plaintiffs of failing to maintain communication and cooperation, while making no reference to the agreed upon TP, that the Plaintiffs honored and paid on, but which the Defendants refused to honor.

19. Upon inquiry from counsel for an explanation as to why the Plaintiffs' TP payments were returned, Defendant Shellpoint Mortgage Servicing responded by way of letter dated September 30, 2024 - a copy of which is attached hereto, incorporated herein by reference and marked as **Exhibit D** - stating:

We received your inquiry regarding your client's trial payments being returned. Please note, our Payment Processing Department was able to advise that the loan is currently on a stop file and that the stop file would need to be removed so that the payments are no longer returned.

Please accept our sincere apology for any inconvenience caused by this error. Newrez/Shellpoint takes its customer service obligations very seriously, and your concerns have been brought to the attention of the appropriate people within our organization.

20. Unfortunately, this error caused a pending foreclosure action against the Plaintiffs - specifically, the matter of Rushmore Loan Management v Xong V Dinh et al, Court of Common Pleas, Philadelphia County, Docket # 230301538 - as a result of which the Plaintiffs incurred severe anxiety, stress and financial expense.

21. It was not until September 26, 2025 that the Plaintiffs received a new loan Modification Agreement from Defendants - under terms which increased the total monthly payment to $493.45.

22. The actions of the Defendants as itemized above resulted in increase accumulation of debt on the subject loan, including interest and late fees, counsel fees and costs and the suffering of great fear, stress, anxiety, embarrassment and humiliation over the prospect of losing the property in foreclosure that manifested itself in loss of sleep, appetite, physical and emotional tension and disability.

23. The conduct of the Defendants as hereinbefore set forth demonstrates a "pattern or practice" of non- compliance with the Real Estate Settlement and Procedures Act (RESPA) Regulation X, by engaging in unjustified delays,failing to properly credit payments and failing to respond to disputes - all as required under 15 U.S.C. § 1639f Reg. Z, 12 C.F.R. § 1026.36(c)(1) and §§ 1024.35 and 1025.36  for which liability may

be imposed for actual and statutory damages, including counsel fees and costs per 12 U.S.C. S 2605(f)(l).

24. At all times relevant and material hereto the Defendants are subject to the within cited provisions of Regulation X of RESPA as 12 CFR Sec 1024.2(b) defines Servicer as a person responsible for the servicing of a federally related mortgage loan (including the person who makes or holds such loan if such person also services the loan).

25. The Plaintiff as a borrower may enforce violations of these provisions through a private cause of action pursuant to 12 U.S.C. S 2605(t). See 12 C.F.R. S 1024.41 (a).

26. As a direct result of the conduct of the Defendants as herein before and hereinafter set forth, the Plaintiffs have suffered severe damages, including but not limited to:

   a. Physical and/or emotional harm and other damages due to resultant anxiety, stress, fear and embarrassment related to the loss of her property through default and foreclosure;

   b. Economic losses associated with the preclusion of their right to cure any erroneous delinquency and/or default thereby exposing Plaintiff to additional interest, late fees, damage to credit, counsel fees and costs;

   c. Other losses as may be revealed during discovery or the trial of this case.

## COUNT ONE
## Violations of the Real Estate Settlement and Procedures Act (RESPA) and  the Truth In Lending Act

27. Plaintiff hereby incorporates by reference all preceding paragraphs as if set forth at length herein.

28. In January 2013, the Consumer Financial Protection Bureau issued a number of final rules concerning mortgage markets in the United States, pursuant to the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA), Public Law No. 111-203, 124 Stat. 1376 (2010).

29. Specifically, on January 17, 2013, the CFPB issued the Real Estate Settlement Procedures Act (Regulation X) and the Truth in Lending Act (Regulation Z) Mortgage Servicing Final Rules, 78 FR 10901 (Regulation Z)(February 14, 2013) and 78 FR 10695

(Regulation X)(February 14, 2013). These Regulations became effective on January 10, 2014.

30. The residential mortgage loan in this case is a "federally related mortgage loan" as that term is defined by Regulation 1024.2 (b) of the said Regulations.

31. As set forth in the Background Material Facts incorporated herein Defendants, through their agents, servants and employees, engaged in a "pattern or practice" of non-compliance with the Real Estate Settlement and Procedures Act (RESPA) Regulation X.

32. Defendants had repetitively yet deceptively advised the Plaintiff that they would be "looking into this matter and will get back to your shortly", but then steadfastly refused to address this dispute and/or perform the required Escrow Analysis to reconcile these errors, all in violation of 12 CFR Part 1024.17(c) Regulation X.

33. Upon inquiry from counsel for an explanation as to why the Plaintiffs' TP payments were returned, Defendant Shellpoint Mortgage Servicing admitted its improper servicing and handling of the subject loan, by way of letter dated September 30, 2024 - a copy of which is attached hereto, incorporated herein by reference and marked as **Exhibit D** - stating:

We received your inquiry regarding your client's trial payments being returned. Please note, our Payment Processing Department was able to advise that the loan is currently on a stop file and that the stop file would need to be removed so that the payments are no longer returned.

Please accept our sincere apology for any inconvenience caused by this error. Newrez/Shellpoint takes its customer service obligations very seriously, and your concerns have been brought to the attention of the appropriate people within our organization.

34. The aforesaid actions constituted a repetitive and unchecked refusal of the Defendants to afford the Plaintiff assistance and aid designed and required by Regulation X, Subpart C, 12 C.F.R. Sec 1024.39 and other laws, to resolve delinquency and default.

35. The conduct of the Defendants as hereinbefore set forth demonstrates a "pattern or practice" of non- compliance with the Real Estate Settlement and Procedures Act (RESPA) Regulation X for which liability may be imposed for actual and statutory damages, including counsel fees and costs, 12U.S.C. S 2605(f)(l).

36. At all times relevant and material hereto the Defendants are subject to the within cited provisions of Regulation X of RESPA as 12 CFR Sec 1024.2(b) defines Servicer as a

person responsible for the servicing of a federally related mortgage loan (including the person who makes or holds such loan if such person also services the loan).

37. The Plaintiff as a borrower may enforce violations of these provisions through a private cause of action pursuant to 12 U.S.C. S 2605(t). See 12 C.F.R. S 1024.41 (a).

38. As a direct and proximate result of the aforesaid, the Plaintiffs were wrongfully accused of a delinquency and default and/or unlawfully prevented from curing a default; and, Defendants have wrongfully threatened to pursue foreclosure all of which has caused the Plaintiffs severe financial, physical and emotional damage and loss.

39. As a further direct result of the conduct of the Defendants as herein before and hereinafter set forth, the Plaintiffs have suffered severe damages, including but not limited to:

   a. Physical and/or emotional harm and other damages due to resultant anxiety, stress, fear and embarrassment related to the loss of her property through default and foreclosure;

   b. Economic losses associated with the preclusion of their right to cure any erroneous delinquency and/or default thereby exposing Plaintiff to additional interest, late fees, damage to credit, counsel fees and costs;

   c. Losses as may be revealed during discovery or the trial of this case.

WHEREFORE, the Plaintiffs demand judgment against Defendants for damages, interests and costs of suit including:

   a. Damages as permitted by statute and common law;

   b. Counsel fees;

   c. All other relief this Court deems necessary and just.

## COUNT TWO - BREACH OF CONTRACT INCLUDING VIOLATION OF THE COVENANTS OF GOOD FAITH AND FAIR DEALING

40. Plaintiff hereby incorporates by reference all preceding paragraphs as if set forth at length herein.

41. At all times relevant and material hereto the Defendants presented an offer to the Plaintiff, specifically an offer to cure any default or delinquency and render the Plaintiff's loan as a positive performing loan on its books, by evaluating the Plaintiff for loss mitigation and as part of the evaluation to review any application submitted for loss mitigation in good faith and in accordance with Federal Rules and Regulations as specified under the Real Estate Settlement and Procedures Act ("RESPA"), 12 CFR Part 1024 (Regulation X).

42. At all times relevant and material hereto the removal of a non-performing loan on its books, would increase the Defendants' efficiency and productiveness in its internal capital market as well as its risk based assessment and rating issued by the Federal Deposit Insurance Corporation - therefore the Defendants' actions were not a magnanimous or gratuitous gesture.

43. At all times relevant and material hereto the Plaintiff did accept the Defendants' repeated offer thereby creating a binding contract in law and/or equity, and in reliance thereon Plaintiff proceeded to make an application for loss mitigation, specifically an application for loan modification wherein it was agreed that a loan modification would render the subject Mortgage/Loan current and avoid foreclosure.

44. On or about March 25, 2024, the Plaintiffs were offered a Trial Plan Modification (TP) via letter from Defendant Specialized Loan Servicing, a copy of which is attached hereto, incorporated herein by reference and marked as **Exhibit A.**

45. At all times relevant and material hereto the Plaintiffs accepted the TP offer, creating a binding contract between the Plaintiffs and the Defendants.

46. At all times relevant and material hereto the Plaintiffs performed their duties under the TP Agreement and made the required payments

47. However, without reason or justification, the Defendant Shellpoint Mortgage Servicing, via letters, returned the Plaintiffs' TP payment - an example is evidenced by a copy of this Defendant's letter to the Plaintiff's dated June 24, 2024 - a copy of which is attached hereto, incorporated herein by reference and marked as **Exhibit B.**

48. Thereafter the Defendants denied the Plaintiffs their adherence to the TP Agreement, and denied the Plaintiffs a Permanency Modification Agreement, without stating any reasons

in writing and without offering alternative loss mitigation options - all in direct violation of 12 C.F.R. § 1026.41(c).

49. As a direct and proximate result of the aforesaid, the Plaintiffs were wrongfully accused of a delinquency and default and/or unlawfully prevented from curing a default; and, Defendants have wrongfully threatened to pursue foreclosure all of which has caused the Plaintiffs severe consequential damages from said breach including financial, physical and emotional damage and loss.

WHEREFORE, the Plaintiffs demand judgment against Defendants for damages, interests and costs of suit including:

   a. Damages as permitted by statute and common law;

   b. Counsel fees;

   c. All other relief this Court deems necessary and just.

**KEAVENEY LEGAL GROUP, LLC**
**Thomas Masciocchi, Esq.**
**New Jersey Bar ID No.: 027941988**
**3747 Church Road, Suite 103**
**Mount Laurel NJ 08054**
**Tel. (800) 219-0931**
***Attorneys for Plaintiffs***